UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:13-CR-210-4 |
| | § | |
| LEOPOLDO ORFILA | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE, AND ORDER DENYING
CERTIFICATE OF APPEALABILITY**

Leopoldo Orfila (Orfila) filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 187. The Government responded and filed a motion for summary judgment. D.E. 199. Orfila did not reply. For the reasons stated herein, the Court grants the Government's motion for summary judgment, denies Orfila's motion to vacate, set-aside, or correct sentence, and denies Orfila a certificate of appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333.

## II. FACTUAL BACKGROUND AND PROCEEDINGS

Orfila was indicted in March 2013 along with four others for conspiracy to murder another prison inmate in violation of 18 U.S.C. §§ 1111, 1117.[1] He was arrested and brought to federal court a week later, and counsel was appointed at his request. D.E. 19, 22, 36, 40.

The conspiracy to murder indictment arose from a gang fight in the Three Rivers Bureau of Prisons facility on March 28, 2008, which resulted in the death of Servando

---

[1] Docket Entry references are to the criminal case.

Rodriguez and stab wounds to 14 members of the Paisa gang. PSR, D.E. 93, ¶¶ 9–10. Twenty-four Mexican Mafia gang members and associates sustained minor injuries such as lacerations, abrasions, contusions, and scratches during their assault on the Paisa members. *Id*., ¶ 11. Orfila and one of his co-defendants received no visible injuries. *Id*., ¶ 12. Witnesses reported seeing Orfila strike Rodriguez with a table leg and also strike another Paisa member, Mario Beltran, who was trying to help the deceased. *Id*., ¶¶ 16, 17. At the time, Orfila denied participation in the melee. *Id*., ¶ 17. Later, blood was found on Orfila's clothing that traced back to Beltran. *Id*.

Orfila entered into a plea agreement with the Government and was rearraigned on May 30, 2013. D.E. 81. In exchange for his plea of guilty and his waiver of his right to appeal or to collaterally attack his conviction or sentence, the Government agreed to recommend that Orfila be given maximum credit for acceptance of responsibility and to recommend a sentence at the low end of the applicable guideline range. *Id.*, ¶¶ 1, 2, 7.[2]

During rearraignment, Orfila acknowledged that he received the indictment, understood the charge against him, and discussed it with his attorney. D.E. 172, pp. 12–

---

[2] The waiver provision read:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

*Id*. (emphasis in original).

13. The Government summarized Orfila's plea agreement, including his waiver of the right to appeal or file a post-conviction challenge.[3] *Id.*, pp. 24–26. Orfila identified the plea agreement he signed and testified he discussed it with his attorney before he signed it. *Id.*, pp. 26–27. The Court specifically reviewed the waiver of his right to appeal. *Id.*, p. 28.[4]

The Court advised Orfila of the maximum punishment of life imprisonment, followed by a mandatory term of supervised release of 5 years, a fine of up to $250,000, and a special assessment of $100. *Id.*, p. 17. He testified that he understood the maximum punishment. *Id.*, p. 18, 20. He was generally warned that his guideline punishment range would be based upon his offense and his criminal history using the Sentencing Guidelines. *Id.*, pp. 21–22. He testified that he understood. *Id.*, p. 22. Orfila testified that his decision to plead guilty was voluntary and that he had not been promised leniency or forced to plead guilty. *Id.*, p. 23. The Government outlined the facts upon which it relied, including that Orfila struck Beltran. Orfila agreed with the recitation. *Id.*, pp. 30–37.

The Probation Department calculated Orfila's offense level at 43 pursuant to §

---

[3] The Government described the plea agreement waivers as follows, "Each Defendant is told that by signing this agreement, they're waiving their rights to appeal, including their rights under Title 28, Section 2255." *Id.*, p. 25.

[4]
    4 Each of the plea agreements contains a
    5 waiver of your right to appeal the conviction and sentence in
    6 your case. Did each of you have a chance to review that waiver
    7 of appeal with your attorneys and do you understand it? . . .
    10 THE COURT: Mr. Orfila?
    11 DEFENDANT ORFILA: Yes, ma'am.
    16 THE COURT: So do each of you understand that you're
    17 waiving your right to appeal your case except under very
    18 limited circumstances? . . . .
    20 THE COURT: Mr. Orfila?
    21 DEFENDANT ORFILA: Yes, ma'am.
*Id*.

2A1.1(a) of the Sentencing Guideline Manual. D.E. 93, ¶ 28. After credit for acceptance of responsibility, Orfila's offense level was 40. *Id.*, ¶¶ 28–37. Orfila had previous convictions that totaled 11 criminal history points, resulting in application of criminal history category V. *Id.*, ¶¶ 39–45. His guideline imprisonment range was 360 months to life. *Id.*, ¶¶ 65–66. Orfila filed numerous objections to the PSR, which included requests that his state and federal sentences be run concurrently, that he be placed in a drug treatment program, and that the Court recommend that he be placed near Laredo, Texas. D.E. 88.

At sentencing, Orfila was represented by new counsel. He testified that he had received his PSR and discussed it with counsel. D.E. 173, p. 3. Defense counsel withdrew the previously filed objections. *Id*. The Government recommended a sentence of 240 months, a reduction of one-third for Orfila's testimony against one of his co-defendants. *Id.*, p. 5. Orfila's counsel argued for a 50 percent reduction due to the helpfulness of Orfila's testimony and due to the risk of harm to Orfila as a result of his testimony, to which the Government did not object. The Court sentenced Orfila to 156 months imprisonment, five years supervised release, and a special assessment of $100, and it imposed restitution of $12,000 jointly and severally with his co-defendants. *Id.*, pp. 6–7. The Court recommended drug treatment and that Orfila be placed near Laredo as he requested. *Id.*, pp. 7, 9. The Court advised Orfila that he had a right to appeal. *Id.*, p. 8.

Orfila filed a notice of appeal, but the Fifth Circuit dismissed his appeal at Orfila's request. D.E. 185. Orfila filed his present motion on November 4, 2014. It is timely.

## III. MOVANT'S ALLEGATIONS

Orfila's claims are difficult to discern. On the § 2255 form, Orfila stated that he referenced a separate letter to state his grounds. The separate letter is hand-written and difficult to read. In his letter, Orfila complains that he is not guilty of conspiracy to murder, but only of conspiracy to riot, and the only reason he pled guilty was that counsel told him that two of his co-defendants were pleading guilty. Orfila further alleges that counsel and the FBI told him that he would be placed by the Bureau of Prisons at Coleman 2 in Florida, away from other gang members. Orfila appears to also claim that his sentence variance below the guideline range was not sufficient for the risks he took by testifying against a co-defendant, and his sentencing counsel did not understand those risks.

The Government argues that Orfila waived his right to file the present motion.

## IV. ANALYSIS

A.     **28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on

direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

B. **Enforcement of Waiver**

Orfila did not address his waiver of the right to collaterally attack his sentence based upon his plea agreement. The burden to demonstrate that his plea and waiver should not be enforced is on Orfila. Although this Court advised Orfila at sentencing that he had a right to appeal, the rearraignment transcript and the plea agreement state that Orfila waived that right and the right to collaterally attack his conviction and sentence by § 2255 motion.

A claim of ineffective assistance of counsel does not automatically relieve a defendant of his waivers of appeal and § 2255 post-conviction proceedings. *See United States v. White*, 307 F.3d 336, 343–44 (5th Cir. 2002) (An ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself."). In *White*, the Court held that defendants can waive their right to pursue claims of ineffective assistance as part of a plea agreement if they wish to do so. *Id.* at 343.

To the extent that Orfila claims that counsel's and the FBI's alleged mention that he would be placed at a prison location in Florida away from gang members and in witness protection was a reason he plead guilty, Orfila's testimony at rearraignment contradicts that claim. Orfila was questioned at rearraignment regarding his understanding of the charges against him, was informed of the maximum punishment, and swore he was not promised leniency for his plea or forced to plead guilty. He was

also questioned regarding his understanding of the plea agreement and his waiver of his right to appeal. He testified that he understood the plea agreement and had reviewed it with counsel before signing it.

The Government included Orfila's waiver of the right to appeal and to collaterally challenge his conviction or sentence in its summary of the plea agreement. The Court also admonished Orfila regarding his waiver of the right to appeal, but did not specifically address his waiver of § 2255 rights as set forth in the plea agreement. This Court's omission of specific mention of § 2255 rights does not render the waiver ineffective. *See United States v. Narvaez*, 452 Fed. App'x 488, 492–93 (5th Cir. Nov. 28, 2011) (per curiam) (designated unpublished); *see also United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (*en banc*) (finding error during plea colloquy to be harmless); *United States v. Azarte–Davalos*, 328 Fed. App'x 921, 922 (5th Cir. May 1, 2009) (per curiam) (designated unpublished) (district court's failure to comply with Rule 11 did not render plea involuntary or unknowing).

Orfila's sworn statements in open court that he understood the plea agreement and the waiver are entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). Furthermore, a signed, unambiguous plea agreement is accorded great evidentiary weight when deciding if the plea is entered voluntarily. *See Bonvillan v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986).

The burden to demonstrate that the waiver should not be enforced is on Orfila. The evidence before the Court is that Orfila's guilty plea, including the waivers, was knowing and voluntary. Orfila's plea agreement and his sworn statements preclude the relief he seeks here. The waiver is enforceable and bars his claims.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Orfila has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Orfila is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment (D.E. 199) is **GRANTED**, Orfila's § 2255 motion (D.E. 187) is **DENIED**, and he is **DENIED** a Certificate of Appealability.

ORDERED this 21st day of July, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE